UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                    Chapter 7

Richard Martin Lewiston,                                  Case No. 12-58599

     Debtor.                                             Hon. Phillip J. Shefferly

_____/

Gene R. Kohut, Chapter 7 Trustee,                         Adversary Proceeding
of the bankruptcy estate of                               No. 14-5115-PJS
Richard Martin Lewiston,

     Plaintiff,

v.

Lois and Richard Lewiston Living
Trust, dated September 10, 1986,
Richard M. Lewiston, individually and
in his capacity as trustee of the Lois and
Richard Lewiston Living Trust, dated
September 10, 1986, and Lois C. Lewiston,
individually and in her capacity as
trustee of the Lois and Richard Lewiston
Living Trust, dated September 10, 1986,

     Defendants.

_____/

**OPINION GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Introduction**

This matter is before the Court on a complaint filed by a Chapter 7 trustee that seeks a

declaratory judgment holding that the interest of a Chapter 7 debtor in a trust is property of his

bankruptcy estate that can be administered by the Chapter 7 trustee. The Chapter 7 trustee filed a motion for summary judgment. The Chapter 7 debtor, who is one of the defendants, filed his own motion for summary judgment. For the reasons explained in this opinion, the Court will grant the Chapter 7 trustee's motion for summary judgment and deny the debtor's motion for summary judgment.

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), and (O).

## Facts

Based on its review of the parties' cross motions for summary judgment and the papers that they have filed in support of their cross motions, the Court finds that the following facts are not in dispute.

Richard M. Lewiston ("Richard") is a lawyer and real estate developer who has been involved in the business of developing and managing real estate projects for many years. Richard is married to Lois C. Lewiston ("Lois"). On September 10, 1986, Richard and Lois entered into the Lois and Richard Lewiston Living Trust ("Trust"). The prefatory recital in the Trust states that Richard, "desiring to create a trust for the benefit of the beneficiaries hereafter set forth, hereby assigns, transfers and delivers to the Trustees the property listed in Exhibit A, attached." Exhibit A lists Richard's interests in various partnerships and corporations he owned at that time.

There are several sections of the Trust that are relevant to the matters before the Court.

Section 1.1 of the Trust states that Richard and Lois are the "Initial Trustees." Section 1.2, titled "Managing Trustee," states that:

-2-

Anything in this Agreement to the contrary notwithstanding, during his lifetime and provided he is not mentally incapacitated, RICHARD shall be the Managing Trustee of the trust created hereunder. In such capacity, he shall have the sole and absolute authority to exercise the rights, powers and duties outlined in 5.1 and 5.2 below, in connection with the management, investment and administration of the trust assets; and his signature on any documents relating to any of these matters shall be sufficient to bind the trust. After RICHARD's death or incapacity, LOIS shall become Managing Trustee, with the same powers and responsibilities.

Richard and Lois are the only beneficiaries of the Trust for as long as either of them are alive. Section 3.1 of the Trust, titled "Distributions to Richard and Lois," states that "[t]he Trustees shall pay over to or for the benefit of the [sic] RICHARD and LOIS during their joint lifetimes all of the annual net income of the trust and such amounts of principal as RICHARD and LOIS jointly may request from time to time, subject to 1.2 above."

Section 4.3 of the Trust is titled "Spendthrift Provision," and reads in part:

The right of any beneficiary to receive distributions under this Agreement shall not be subject to any conveyance, transfer or assignment by any beneficiary, or be pledged as security for the debts of any beneficiary, and the same shall not be subject to any claims by creditors of any beneficiary through legal process or otherwise. It is RICHARD's intention to place the absolute title to the property held in trust, together with all income, accruals and increases thereof, in the Trustees, with power and authority to pay out the same only as authorized hereby.

Section 5.1 of the Trust, titled "Rights, Powers and Duties of Trustees," reads in part:

Subject to 1.2, above, the rights, powers and duties of the Trustees with respect to the investment and management of the Trust established hereunder shall be:
. . .

(n)     Whenever required or permitted to divide and distribute the trust estate, to make such division or distribution in money or in kind or partly in money and partly in kind without distributing the same or similar kind of asset to each beneficiary.

-3-

Section 6.1 of the Trust, titled "Trust Amendments, Revocation, etc.," reads in part that, "[d]uring the joint lifetimes of RICHARD and LOIS, this Agreement may be amended, modified or revoked, in whole or in part, but only by the joint action and consent of RICHARD and LOIS."

On February 15, 2008, Richard and Lois made an Amendment to Lois and Richard Lewiston Living Trust ("Amendment"). The first recital states that "Richard and Lois are all of the Trustees and present beneficiaries" of the Trust. The Amendment then makes two changes to the Trust. The first change is to Section 1.2 of the Trust, which identifies the "Managing Trustee." The Amendment provides that this section is now amended and restated in its entirety as follows:

> Either Richard or Lois, acting alone, shall be considered the Managing Trustee of the trust created hereunder. In such capacity, either shall have the authority to exercise the rights, powers and duties outlined in 5.1 and 5.2 below, in connection with the management, investment and administration of the trust assets; and the signature of either on any document relating to any of these matters shall be sufficient to bind the trust.

The second change is to Section 6.1 of the Trust, governing "Trust Amendments, Revocation, etc.," which is now amended and restated in its entirety as follows:

> During the joint lifetimes of Richard and Lois, this Agreement may be amended, modified or revoked, in whole or in part, but only by the joint action and consent of Richard and Lois. Upon the death of either Richard or Lois, the trust shall become irrevocable.

On August 13, 2012, Richard filed this Chapter 7 case. On his schedules of assets and liabilities, Richard listed over $11 million of assets and over $18 million of liabilities. On schedule B, Richard disclosed the Trust, but explained that this disclosure was for notice purposes only, and that the Trust is not property of his bankruptcy estate.

On October 24, 2014, Gene R. Kohut ("Plaintiff"), as the Chapter 7 trustee in Richard's bankruptcy case, filed a single count complaint ("Complaint") (ECF No. 1) that names as defendants

-4-

the Trust, and Richard and Lois, both individually and in their capacities as trustees of the Trust (collectively, the "Defendants"). Paragraph 12 of the Complaint alleges that Richard is the settlor of the Trust. Paragraph 14 alleges that the Trust has two trustees, Richard and Lois. Paragraph 15 alleges that Richard and Lois are the beneficiaries of the Trust. Paragraph 20 alleges that Richard transferred the assets of the Trust into the Trust. Paragraph 21 alleges that the assets of the Trust were owned by Richard before he transferred them into the Trust. Paragraph 24 alleges that the Trust contains a spendthrift provision.

In his answer to the Complaint (ECF No. 8), Richard admits all of the allegations in paragraphs 12, 14, 15, 21 and 24 of the Complaint. Richard admitted paragraph 20 in part, that he transferred some assets into the trust, but not all. In her amended answer to the Complaint (ECF No. 12), Lois admits all of the allegations in those same paragraphs of the Complaint, with three qualifications. As to paragraph 12, Lois admits that Richard was the "original" settlor of the Trust, but denies that Richard continues to be the "sole" settlor of the Trust. As to paragraph 20, Lois admits that Richard transferred some, but not all, of the assets into the Trust. As to paragraph 21, Lois admits only that some of the assets of the Trust were owned by Richard before he transferred them into the Trust.

The Complaint further alleges that (i) the spendthrift provision of the Trust is not enforceable under Michigan law, (ii) the Trust is against public policy and unenforceable because it is a self-settled trust designed to place Richard's assets beyond the reach of his creditors, and (iii) Richard's interest in the Trust is property of his bankruptcy estate. The Defendants deny these allegations. The Complaint requests a declaratory judgment in favor of the Plaintiff and an order

requiring the Defendants to surrender the property of the Trust to the Plaintiff for liquidation in Richard's Chapter 7 case.

On April 13, 2015, the Plaintiff filed a motion for summary judgment (ECF No. 33). The motion argues that the Trust is a self-settled trust in that Richard is both a settlor and a beneficiary of the Trust and, as a result, the spendthrift provision restricting the transfer of his interest in the Trust is unenforceable under Michigan law. In support, the Plaintiff relies on the provisions in the Trust and in the Amendment that establish that Richard is both a settlor and a beneficiary of the Trust. In addition, the Plaintiff attaches excerpts of testimony by Richard from the trial of an objection to his Chapter 7 discharge under § 727 of the Bankruptcy Code that was held on January 12-16, 2015 in adversary proceeding no. 12-06010 ("§ 727 Trial"). According to the Plaintiff, these excerpts of testimony demonstrate that Richard (i) consistently took distributions from the partnership and corporate interests that he transferred to the Trust and deposited them in his own personal bank account rather than a bank account for the Trust; (ii) routinely signed documents on behalf of the partnerships and corporations that were purportedly owned by the Trust without designating in any way that he was doing so in any capacity on behalf of the Trust; and (iii) made no distinction between his individually owned business interests and those business interests that he transferred to the Trust, treating all of them as his own. The Plaintiff argues that the facts in the Complaint that are admitted by the Defendants, together with the express terms of the Trust and the Amendment, and Richard's uncontroverted testimony at the § 727 Trial, combine to show that there are no genuine issues of material fact in dispute. Based on the undisputed facts, the Plaintiff argues that the spendthrift provision in the Trust is unenforceable under Michigan law and, therefore, Richard's interest in the Trust is property of his bankruptcy estate.

-6-

On April 30, 2015, Richard filed his own motion for summary judgment (ECF No. 38). Richard's motion argues that the spendthrift provision in the Trust is enforceable under Michigan law because the Trust is an irrevocable trust in that Richard cannot revoke it without the consent of Lois. In addition, Richard's motion argues that Richard's and Lois's interests as beneficiaries of the Trust are held by them as a tenancy by the entirety and, as a consequence, Richard's interest in the Trust is not property of the bankruptcy estate. In support, Richard relies solely on the express terms of the Trust and the Amendment. Richard's motion is not supported by any affidavits or other documents. Nor does Richard's motion disavow or in any way contradict his testimony at the § 727 Trial. Like the Plaintiff's motion, Richard's motion also argues that there are no genuine issues of material fact in dispute. Unlike the Plaintiff's motion, Richard argues that the undisputed facts show that the spendthrift provision in the Trust is enforceable under Michigan law and, therefore, Richard's interest in the Trust is not property of his bankruptcy estate.

Lois did not file her own motion for summary judgment. However, on April 30, 2015, she filed a response (ECF No. 34) to the Plaintiff's motion for summary judgment. Like Richard, Lois argues in her response that the Trust is not a revocable trust, the spendthrift provision in the Trust is enforceable, and Richard's interest in the Trust is not property of his bankruptcy estate. Lois's response also makes a separate argument that the spendthrift provision in the Trust is enforceable because in this case, apart from the assets contributed by Richard to the Trust, Lois contributed her own property to the Trust over the years consisting of $1.5 million. Lois's response was not initially supported by an affidavit. The only document that Lois initially filed in support of her response is an unsigned list of "deposits" covering a period from January 1, 2006 through December 31, 2012. However, on June 9, 2015, the day before the scheduled hearing on the cross motions for summary

judgment, Lois filed a declaration ("Declaration") (ECF No. 43) stating that Lois contributed the

$1.5 million to the Trust that was described in the unsigned list of "deposits" that is attached to her

response.

On June 10, 2015, the Court held a hearing on the cross motions for summary judgment. At

the conclusion of the hearing, the Court took both motions under advisement. They are now ready

for decision.

### Summary judgment standard

Fed. R. Civ. P. 56 for summary judgment is incorporated into Fed. R. Bankr. P. 7056.

Summary judgment is only appropriate when there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 247 (1986).

> The moving party has the initial burden of proving that no genuine issue of material
> fact exists and that the moving party is entitled to judgment as a matter of law.
> <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1477 (6th Cir.1989). To meet this
> burden, the moving party may rely on any of the evidentiary sources listed in
> Rule 56(c) or may merely rely upon the failure of the nonmoving party to produce
> any evidence which would create a genuine dispute for the jury. <u>Id.</u> at 1478.
> Essentially, a motion for summary judgment is a means by which to "challenge the
> opposing party to 'put up or shut up' on a critical issue." <u>Id.</u>

<u>Cox v. Kentucky Dept. of Transportation</u>, 53 F.3d 146, 149 (6th Cir. 1995).

"The burden then shifts to the non-moving party to come forward with specific facts,

supported by evidence in the record, upon which a reasonable jury could return a verdict for the

non-moving party." <u>Kalamazoo River Study Group v. Rockwell International Corp.</u>, 171 F.3d

1065, 1068 (6th Cir. 1999) (citing <u>Anderson</u>, 477 U.S. at 248). "The non-moving party, however,

-8-

must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position.  Berryman, 150 F.3d at 566 (citing Anderson, 447 U.S. at 248).

The scope of the record that the Court may consider in deciding a summary judgment motion is outlined in Rule 56(c):

> (1) *Supporting Factual Positions.*   A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> . . .
> (3) *Materials Not Cited.*  The court need consider only the cited materials, but it may consider other materials in the record.

### Discussion

Section 541(c)(2) of the Bankruptcy Code

Under § 541(a)(1) of the Bankruptcy Code, the commencement of a bankruptcy case creates an estate that is comprised of all of a debtor's legal or equitable interests in property, wherever located and by whomever held.  Sections 541(b) and (c) specify certain types of property interests that are excluded from the bankruptcy estate.  One of those exclusions is set forth in § 541(c)(2), which provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."

The issue before the Court on the cross motions for summary judgment in this case turns on the application of § 541(c)(2) to the spendthrift provision contained in the Trust.  Specifically, is the restriction contained in the spendthrift provision in Section 4.3 of the Trust enforceable under

-9-

applicable nonbankruptcy law?  If so, then Richard's interest in the Trust is not property of his bankruptcy estate.  If not, then Richard's interest in the Trust is property of his bankruptcy estate that can be administered by the Plaintiff for the benefit of Richard's creditors.

In Wilcox v. General Retirement System of the City of Detroit (In re Wilcox), 233 F.3d 899 (6th Cir. 2000), the Sixth Circuit Court of Appeals set forth the framework for applying § 541(c)(2). "An inquiry under § 541(c)(2) normally has three parts: First, does the debtor have a beneficial interest in a trust?  Second, is there a restriction on the transfer of that interest?  Third, is the restriction enforceable under nonbankruptcy law?"  Id. at 904.  In this case, the parties agree that Richard does have a beneficial interest in the Trust.  The parties also agree that there is a restriction on Richard's ability to transfer his beneficial interest.  The spendthrift provision in Section 4.3 of the Trust restricts Richard from transferring his right as a beneficiary to receive distributions under the Trust.  The crux of the dispute between the parties in this case relates to the third question posed by Wilcox: whether the restriction contained in Section 4.3 is enforceable under nonbankruptcy law.

In Patterson v. Shumate, 504 U.S. 753, 758-59 (1992), the Supreme Court explained that the reference in § 541(c)(2) to "applicable nonbankruptcy law" includes both state law and federal nonbankruptcy law.  In this case, the parties agree that the relevant applicable nonbankruptcy law is the law of the state of Michigan.  Section 6.4 of the Trust, titled "Applicable Law," provides that "[t]he validity, construction and all rights and obligations under this Agreement shall be governed by the laws of the State of Michigan . . . ."  While the parties agree that Michigan law applies to the spendthrift provision in Section 4.3 of the Trust, they disagree as to what Michigan law provides and, in particular, they disagree as to whether the enforceability of the spendthrift provision is governed by Michigan common law or by Michigan statute.

<u>Michigan law regarding spendthrift trust provisions</u>

Michigan common law has long recognized both the concept and the validity of a spendthrift trust provision. In <u>In re Estate of Edgar</u>, 389 N.W.2d 696 (Mich. 1986), the Michigan Supreme Court observed that

> [t]he concept of a spendthrift trust has been long recognized by Michigan courts. In *In re Peck Estates,* 320 Mich. 692, 699, 32 N.W.2d 14 (1948), this Court acknowledged that a trust which *restricted* the ability of the beneficiaries
>
>> "to assign, convey, pledge, hypothecate or anticipate the payment of any sum . . . which may at any time be or become due or payable by way of income or principal, under the terms of this will"
>
> was a spendthrift trust.

<u>Id.</u> at 698 (other citation omitted).

In <u>Fornell v. Fornell Equipment Inc.</u>, 213 N.W.2d 172, 176 (Mich. 1973), the Michigan Supreme Court explained that a spendthrift trust is a trust

> "created to provide a fund for the maintenance of the beneficiary and at the same time to secure it against his improvidence or incapacity. In a narrower and more technical sense, a spendthrift trust is one that restrains either the voluntary or involuntary alienation by a beneficiary of his interest in the trust, or which, in other words, bars such interest from seizure in satisfaction of his debts. The name 'spendthrift trusts' is poorly descriptive, since no spendthriftiness or profligacy of a beneficiary is requisite to, or open to inquiry in determination of, the existence of such a trust." 54 Am. Jur., Trusts, § 148, p. 123.

The <u>Fornell</u> court then discussed the theory for respecting a spendthrift trust:

> It is not requisite to the creation or validity of a spendthrift trust that the beneficiary be in fact a spendthrift.
>
> Spendthrift trusts are upheld on the theory that the donor of the trust has the right to give his property on any condition he sees fit, and the beneficiary's creditors cannot complain that the settlor did not give his bounty to them.

<u>Id.</u>

-11-

Significantly, <u>Fornell</u> also explained that there is a public policy exception to the validity of a spendthrift trust where the person creating the trust and the beneficiary are one and the same.

> A person cannot, however, create a true spendthrift trust for himself. Public policy does not permit a man to place his own assets beyond the reach of his creditors. But a settlor is not precluded from transferring his own property in trust to protect himself against his own improvidence.
>
>> "Such a trust is binding on him except in so far as it is still within his power to alien or encumber it with debts[.]"

<u>Id.</u> (quoting 54 Am. Jur., Trusts, § 166, p. 135).

The case law that developed in Michigan after <u>Fornell</u> has continued to recognize the public policy exception articulated in <u>Fornell</u>. In <u>In re Johannes Trust</u>, 479 N.W.2d 25 (Mich. Ct. App. 1991), the Michigan Court of Appeals dealt with a guardian's petition to a probate court to create a trust for the benefit of her sister Martha, who was developmentally disabled. <u>Id.</u> at 27. The proceeds that would fund the trust were to come from Martha's inheritance from her aunt. Under the terms of the proposed trust, the guardian was to be the original trustee of the trust, and would have sole discretion to make distributions to Martha. The issue before the <u>Johannes</u> court was whether Martha's creditors could reach the amounts that the trustee could distribute to her under the proposed trust, based on the fact that the trust was to be funded with proceeds that came from her inheritance. <u>Id.</u>

In holding that Martha's creditors could reach the trust assets, the court adopted the following rule from the Restatement of Trusts: "'Where a person creates for his own benefit a trust with a provision restraining the voluntary or involuntary transfer of his interest, his transferee or creditors can reach his interest.'" <u>Id.</u> at 28 (quoting 1 Restatement (Second) Trusts, § 156 (1959)). The court explained how this rule promotes a valid public policy in terms that are similar to and

-12-

consistent with the public policy described by <u>Fornell</u> when it stated that a person cannot create a true spendthrift trust for himself:

> Furthermore, the rule stated in the Restatement promotes a valid public policy: A person ought not to be able to shelter his assets from his creditors in a discretionary trust of which he is the beneficiary and thus be able to enjoy all the benefits of ownership of the property without any of the burdens.

<u>Id.</u>

Later, in <u>In re Hertsberg Intervivos Trust</u>, 578 N.W.2d 289 (Mich. 1998), the Michigan Supreme Court dealt with another trust for a developmentally disabled person. In this case, Edith Hertsberg had neglected her daughter, Barbara, and had failed to provide for Barbara out of the social security benefits that Edith had received on Barbara's behalf. <u>Id.</u> at 291. To remedy this situation, the Wayne County Circuit Court ordered Edith to fund a trust for the benefit of Barbara with $150,000.00. The trust named Edith as the grantor and Barbara as the beneficiary, and contained a spendthrift provision. The Department of Mental Health claimed that it was a creditor of Barbara, entitled to reimbursement for services that it had provided to Barbara in the past, and sought a determination that the spendthrift provision in the trust did not protect the trust assets from Barbara's creditors. The Michigan Supreme Court stated that "[t]he determinative question is who should be considered the settlor of the trust – Barbara Hertsberg, or her mother, Edith Hertsberg, who funded the trust pursuant to a court order." <u>Id.</u> at 290. The court answered this question by holding that Barbara was the settlor of the trust because the trust was funded with her assets, even though the trust named Edith as the grantor. <u>Id.</u> at 292-93. Because Barbara was both the settlor and the beneficiary of the trust, the spendthrift provision in the trust was ineffective against Barbara's creditors. In so holding, the Michigan Supreme Court agreed with the <u>Johannes</u> decision

-13-

to adopt the Restatement (Second) of Trusts, § 156 (1959), based upon the same public policy concern: "As recognized by the Court of Appeals in In re Johannes Trust, [ ] it would be contrary to public policy to allow a person to shelter assets from creditors in a trust of which he is the beneficiary." Id. at 291.

In addition to Michigan common law, there are statutory provisions in Michigan that govern spendthrift trust provisions. On April 1, 2010, Michigan enacted the Michigan Trust Code ("MTC"), Mich. Comp. Laws Ann. §§ 700.7101 to .7913. The MTC applies to all trusts in Michigan, including trusts that were created before the MTC was enacted. Id. § 700.8206(1)(a) and (2); see also Independent Bank v. Hammel Associates, LLC, 836 N.W.2d 737, 740 (Mich. Ct. App. 2013) ("The MTC applies to trusts created before its enactment, but does not impair accrued rights or affect an act done before its effective date.").

Like the common law in Michigan, the MTC recognizes the validity of a spendthrift provision. The statute defines a "spendthrift provision" in Mich. Comp. Laws Ann. § 700.7103(j) as "a term of a trust that restrains either the voluntary or involuntary transfer of a trust beneficiary's interest." Section 700.7502(1) states that "[a] spendthrift trust provision is valid and enforceable." Section 700.7502(3) provides that "the trust beneficiary's interest in a trust may not be transferred in violation of a valid spendthrift provision and trust property is not subject to enforcement of a judgment until distributed directly to the trust beneficiary."

While the MTC expressly recognizes the validity and enforceability of a spendthrift provision, it does not state whether a spendthrift provision may be used by an individual who creates a trust, places their own assets in it, and also designates themself as a beneficiary of the trust. Nor

-14-

does the statute state whether it abrogates or continues to recognize the public policy exception against a self-settled trust under <u>Fornell</u>, <u>Johannes</u> and <u>Hertsberg</u>, all of which predate the MTC.

Does the Michigan Trust Code abrogate<br>
<u>Michigan common law on self-settled spendthrift trusts?</u>

The effect of the MTC on the pre-MTC common law in Michigan is a pivotal issue in this case. In his motion for summary judgment, the Plaintiff argues that the MTC does not abrogate in any way the holdings of <u>Fornell</u>, <u>Johannes</u> and <u>Hertsberg</u>. Although the MTC recognizes the validity of a spendthrift provision generally, the Plaintiff argues that self-settled spendthrift trusts are still unenforceable because they violate the public policy of the State of Michigan. In his motion for summary judgment, Richard argues that the MTC does abrogate the holdings of those cases. In her response to the Plaintiff's motion for summary judgment, Lois agrees with Richard that there is no provision in the MTC that specifically invalidates a spendthrift provision where the person making the trust is also a beneficiary, but stops short of arguing that the MTC entirely abrogates <u>Fornell</u> and its progeny. Both Richard and Lois argue that because there is no provision in the MTC that expressly invalidates a spendthrift provision in a trust in which the person contributing the assets to the trust is also a beneficiary, then such self-settled trusts are now permissible in Michigan.

In support of their argument that the MTC now permits self-settled spendthrift trusts, Richard and Lois rely on Mich. Comp. Laws Ann. § 700.7506, titled "Satisfaction of claims against revocable trusts or trusts having multiple settlors; persons deemed settlors." This section of the MTC spells out the rights of a creditor of a settlor of a spendthrift trust, which differ depending on whether the trust is revocable or irrevocable, and depending on whether there are one or multiple settlors. Section 700.7506(1)(a) states that "[d]uring the lifetime of the settlor, the property of a

-15-

revocable trust is subject to claims of a settlor's creditors." Section 700.7506(1)(c) states that with respect to an irrevocable trust, a settlor's creditor is limited in what property it can reach in the trust, to the lesser amount of the claim of the creditor or the "maximum amount that can be distributed to or for the settlor's benefit exclusive of sums to pay the settlor's taxes during the settlor's lifetime." Section 700.7506(2) then places limits on what a creditor of a particular settlor may recover when there is more than one settlor.

The Defendants' reliance on § 700.7506 is misplaced. As explained in the common law in Estate of Edgar, and in the MTC in § 700.7502(3), a spendthrift provision is a restriction on the ability of a *beneficiary* to transfer his or her beneficial interest in trust property, not a restriction on a *settlor*. In contrast, § 700.7506 focuses on the rights of a creditor of a *settlor,* without regard to the identity of any *beneficiary*. This section of the statute does not either explicitly or implicitly limit the rights of a creditor of a *beneficiary* who is also a settlor of a trust with a spendthrift provision. It does not support the Defendants' contention that the MTC somehow permits a self-settled spendthrift trust.

However, there are other sections of the MTC that are instructive on the question of whether the MTC permits a self-settled spendthrift trust. Section 700.7402 sets forth the requirements for the creation of a trust in Michigan. Section 700.7404 then places limits upon the purposes for which a trust may be created in Michigan: "A trust may be created only to the extent its purposes are lawful, not contrary to public policy, and possible to achieve." Section 700.7105 gives great deference to the terms of a trust, but expressly qualifies that deference by stating in subparagraph (2)(c) that the terms of a trust are limited by "[t]he requirement under section 7404 that the trust have a purpose that is lawful, not contrary to public policy, and possible to achieve."

-16-

The plain text of §§ 700.7105 and .7404 makes it clear that the MTC recognizes that a trust may only be created in Michigan if it is not contrary to public policy. The statute does not attempt to survey the public policy in Michigan. But neither does it state that it intends to change existing public policy in Michigan. Instead, the statute merely recognizes that the public policy of the State of Michigan continues to serve as a limitation upon trusts created and governed by the MTC.

None of the parties cite to any reported or unreported decisions by Michigan courts that address the continuing vitality of the <u>Fornell</u> public policy exception after enactment of the MTC. However, Michigan courts have provided guidance on the extent that common law is abrogated when faced with a potential conflict with a newly enacted statute. In Michigan,

> the Legislature is deemed to act with an understanding of common law in existence before the legislation was enacted. Moreover, statutes in derogation of the common law must be strictly construed, and will not be extended by implication to abrogate established rules of common law. In other words, where there is doubt regarding the meaning of such a statute, it is to be given the effect which makes the least rather than the most change in the common law.

<u>Nation v. W.D.E. Electric Co.</u>, 563 N.W.2d 233, 236 (Mich. 1997) (alterations, internal quotation marks and citations omitted); <u>see also</u> <u>Velez v. Tuma</u>, 821 N.W.2d 432, 436-37 (Mich. 2012) (holding that a court shall "not lightly presume that the Legislature has abrogated the common law," as the Michigan legislature must "speak in no uncertain terms when it exercises its authority to modify the common law") (quotation marks and citation omitted). The reason for this rule of statutory construction was articulated in <u>Miller v. Department of Mental Health</u>, 442 N.W.2d 617 (Mich. 1989). In addressing a different trust issue, the Michigan Supreme Court stressed that parties have certain expectations based on long-settled common law. "Absent an express statement from

-17-

the Legislature, this Court would not be justified in concluding that the Legislature intended to defeat those expectations." Id. at 621.

Because the MTC does not state that it abrogates the common law in Michigan regarding the enforceability of a spendthrift provision in a self-settled trust, well established principles of statutory construction in Michigan compel the Court to conclude that the common law prohibition against self-settled spendthrift trusts, as articulated in Fornell, retains its vitality. The Court declines Richard's invitation to hold that the MTC by implication abrogates the common law in Michigan.

Instead, the Court holds that the MTC neither authorizes self-settled spendthrift trusts nor abrogates Michigan common law public policy regarding self-settled spendthrift trusts. The public policy against self-settled spendthrift trusts, articulated by the Michigan Supreme Court in Fornell, Johannes and Hertsberg, remains intact and continues to limit the purposes for which a trust can be created in Michigan.[1]

---

[1] Although unnecessary to the Court's holding, it is worth noting that the existing commentary about the MTC all suggests that the Michigan legislature did not intend the MTC to abrogate the common law in Michigan regarding self-settled spendthrift trusts. The MTC was drafted by the Michigan Trust Code Committee of the Probate and Estate Planning Section of the State Bar of Michigan. In February, 2009, Mark K. Harder, the Chair and Reporter of the Committee, prepared a "Summary of the Michigan Trust Code" (ECF no. 40, Ex. 1 at 7-13 of 34) for members of the Michigan legislature. The summary refers numerous times to the Committee's desire to preserve long-standing Michigan common law. For example, in comparing the MTC to current Michigan law, the summary states that "[t]he Committee preserved well established Michigan law unless a compelling public policy consideration made it appropriate to change the law." (Id. at 9 of 34.) In describing Article 5, which deals with creditors rights and includes the specific MTC section cited by the Defendants, the summary states that

> the Michigan Trust Code Committee reviewed current Michigan case law and found that [it] is comprehensive and closely follows the Restatement (Second) of the Law of Trusts. The Committee rejected the [Uniform Trust Code] provisions and drafted a set of provisions that codifies the current case law.

-18-

<u>Does the Trust violate the public policy of *Fornell*?</u>

Even if the MTC does not abrogate <u>Fornell</u>, the Defendants make several legal arguments

as to why <u>Fornell</u> does not control this case.  First, they argue that Richard is not the only

beneficiary of the Trust.  Lois too is a beneficiary.  But the fact that Lois is also a named beneficiary

of the Trust does not insulate Richard's beneficial interest in the Trust from his creditors.  Richard

is still a settlor of the Trust.  Richard still contributed assets to the Trust.  And Richard is still a

---

(<u>Id.</u>)
     Further, in "Introducing the Michigan Trust Code," 89 Mich. Bar J. 24 (2010), Harder
described the MTC as "the state's first comprehensive codification of the law of trusts."  In that
article, Harder explained that the MTC was the result of a five year drafting effort, and that it
relies on the structure and provisions of the Uniform Trust Code as a starting point, but draws
from both the Uniform Trust Code and existing Michigan law to preserve long established
procedures, practices and principles concerning trusts in Michigan.  <u>Id.</u> at 24.
     In addition, the "Summary of the Michigan Trust Code" highlights the fact that the MTC
specifically did not adopt certain provisions in the Uniform Trust Code.  Those provisions
include some that address the rights of creditors of a trust *beneficiary*:

> Article 5 of the UTC deals with the rights of creditors of trust beneficiaries and
> was controversial.  However, the Michigan Trust Code Committee reviewed
> current Michigan case law and found that is comprehensive and closely follows
> the Restatement (Second) of the Law of Trusts.  The Committee rejected the UTC
> provisions and drafted a set of provisions that codifies the current case law.

(ECF no. 40, Ex. 1 at 9 of 34.)  The summary states even more directly in a footnote that "[t]he
focus upon creditors of *beneficiaries* is important.  The MTC does not authorize self-settled asset
protection trusts."  (<u>Id.</u> at 11 of 34, n.2.)
     Harder also wrote an article in 2009 entitled "The Michigan Trust Code: An Overview."
(<u>Id.</u> at 14 of 34.)  Harder again addressed self-settled trusts, stating that "the Michigan Trust
Code committee was not charged with evaluating the appropriateness of their use in Michigan."
(<u>Id.</u> at 16 of 34.)  Although other states recognize and protect self-settled trusts, "the committee
did not consider whether the Michigan Trust Code should permit or authorize self-settled
protection trusts" and "the Michigan Trust Code does not address this subject."  (<u>Id.</u>)  <u>See also</u>
Harder, "Introducing the Michigan Trust Code," 89 Mich. Bar J., at 25 ("Self-settled asset
protection trusts are not part of the Uniform Trust Code, and the MTC does not address this
subject.").

-19-

beneficiary of the Trust. Those undisputed facts are all that is needed to hold that the Trust violates the public policy in Michigan. Adding his wife as a beneficiary does not alter the fact that Richard is a settlor who contributed his own assets to the Trust and named himself as a beneficiary.

Second, the Defendants argue that the Trust is irrevocable because Section 6.1 of the Trust says that the Trust can only be revoked by joint action of Richard and Lois. Although the Plaintiff takes issue with this assertion and contends that the Trust is revocable, this distinction – between revocability and irrevocability – is irrelevant to the issue before the Court. To be sure, Mich. Comp. Laws Ann. § 700.7506 recognizes this distinction for purposes of determining what a creditor of a *settlor* of a spendthrift trust may recover from the trust. But, as noted earlier, § 700.7506 does not purport to determine or in any way address what a creditor of a *beneficiary* of a spendthrift trust may recover from the trust. Under Fornell, the spendthrift provision that restricts a beneficiary of a self-settled trust from transferring his or her beneficial interest is void as against public policy, without regard to whether the Trust is revocable or irrevocable. Simply put, whether the Trust is held to be revocable or irrevocable, the result for Richard as a *beneficiary* is the same: Richard's beneficial interest is not protected from his creditors by the spendthrift provision.

Third, the Defendants argue that even if Richard's beneficial interest is not protected from his creditors by the spendthrift provision, Section 3.1 of the Trust prohibits Richard from receiving any distribution from the Trust without Lois jointly requesting such a distribution. The Defendants cite no legal authority to support their claim that Section 3.1 of the Trust takes this case outside of the holding in Fornell. Furthermore, this is a distinction without a difference. The salient facts remain the same: Richard is both a settlor of the Trust and a beneficiary of the Trust, with a

spendthrift provision that purports to restrict the transfer of his right to distributions from the Trust. Under Fornell, the spendthrift provision is unenforceable.

Fourth, Lois makes a separate argument that she too is a settlor of the Trust because she put in $1.5 million of assets. Assuming arguendo that Lois is a settlor, that proposition may be relevant for determining what creditors of the *settlors* may reach under Mich. Comp. Laws Ann. § 700.7506(2).[2] But it has no relevance to what the creditors of Richard, as a *beneficiary*, may recover from the Trust. Resolution of this issue simply does not turn on what assets a creditor of another settlor of a spendthrift trust may recover against that settlor under § 700.7506. At most, treating Lois as a settlor – despite the fact that the Trust does not name her as a settlor – means only that there are (i) two settlors: Richard and Lois; (ii) two trustees: Richard and Lois; and (iii) two beneficiaries: Richard and Lois. Making Lois a settlor does not change the analysis. The Michigan Supreme Court has consistently held that it is contrary to public policy to allow a person to shelter assets from creditors in a spendthrift trust in which he or she is a beneficiary. Having two persons shelter their assets from their creditors in a spendthrift trust in which they are the beneficiaries is no less a violation of this public policy than having one person do so. And Lois's status as a settlor does not, in any event, alter the fact that Richard is undeniably both a settlor and a beneficiary.

Fifth, Richard makes one final argument as to why the Trust does not violate public policy and why his beneficial interest is not property of his bankruptcy estate. Specifically, Richard argues that he and Lois own their beneficial interests in the Trust as a tenancy by the entirety. This is not

---

[2] Mich. Comp. Laws Ann. § 700.7506(1)(c)(2) provides that where a spendthrift trust has more than one settlor, the amount of the trust assets that a creditor of a particular settlor may reach shall not exceed that settlor's interest in the portion of the trust attributable to that settlor's contribution.

the first time that Richard has made this argument. On the original schedule C that he filed in his Chapter 7 case, Richard listed the Trust and claimed an exemption in it as a tenancy by the entirety under Michigan law. The Plaintiff filed an objection. On September 19, 2014, the Court held a hearing. The Court sustained the Plaintiff's objection, holding that Richard's interest in the Trust was not held as a tenancy by the entirety with Lois. On October 8, 2014, the Court entered an order memorializing that ruling. Richard appealed that order to the United States District Court for the Eastern District of Michigan. The appeal remains pending. Richard then amended his schedule C, but still claimed that his interest in the Trust is exempt because it is held by him as a tenancy by the entirety with Lois. The Plaintiff objected to Richard's amended schedule C. On February 13, 2015, the Court held a hearing. The Court again sustained the Plaintiff's objection. Richard again filed an appeal. This appeal also remains pending.

Because this Court made its rulings on Richard's claim of exemption to his interest of the Trust, and Richard appealed these rulings, the issues raised by the Court's rulings are now solely the province of the District Court. Aside from the fact that this Court has already twice rejected Richard's tenancy by the entirety argument, and sees nothing new in his latest iteration, the District Court has the sole jurisdiction to now decide that issue. See Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 59 (1982) (holding that "[t]he filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal").

None of the Defendants' legal arguments persuade the Court that Michigan's public policy against self-settled spendthrift trusts does not control in this case. But the Plaintiff makes one other very compelling argument as to why it must be applied in this case: as a matter of fact, Richard has

-22-

at all times treated, used and enjoyed the property in the Trust as his own.  In support of this

argument, the Plaintiff attaches to his motion the following excerpts of Richard's testimony from

his § 727 Trial:

- Distributions from Income Advisors Company, a company supposedly owned by the Trust, have been regularly deposited in Richard's personal bank account, not the Trust's. (Adv. Proc. No. 12-6010, Trial Tr., Jan. 16, 2015, (ECF No. 237), at 119-21.)

- Richard has signed documents on behalf of Stratford Apartments, LLC, another company supposedly owned by the Trust, as an individual owner, not as a representative of the Trust, and the proceeds from the sale of the Trust's interest in Stratford Apartments, LLC to Leslie and Jeffrey Etterbeek were placed into Richard's personal bank account, not the Trust's bank account. (Id. at 121-22.)

- Distributions from the Richard M. Lewiston Company, another company owned by the Trust, were made to Richard personally and deposited into his personal bank account, not the Trust's bank account. (Id. at 123.)

- Richard makes no distinction between signing documents in his personal capacity or as trustee of the Trust. (Id. at 90.)

In addition to the excerpts of Richard's testimony from the § 727 Trial that are cited by the

Plaintiff, the Court's own review of the transcripts from the § 727 Trial reveals the following

additional testimony:[3]

---

[3] The Court recognizes that these excerpts are not part of the official record of this adversary proceeding and that the general rule is that a court will not go outside of the record before it when deciding a motion for summary judgment.  However, as the Sixth Circuit has stated, "the court has the right to examine its own records and take judicial notice thereof in regard to proceedings formerly therein by one of the parties to the proceeding now before it." A.G. Reeves Steel Const. Co. v. Weiss, 119 F.2d 472, 474 (6th Cir. 1941) (citations omitted); see also Harrington v. Vandalia-Butler Bd. of Ed., 649 F.2d 434, 441 (6th Cir. 1981) ("[A] court may take judicial notice of its own record of another case between the same parties.") (citing in part Shuttlesworth v. Birmingham, 394 U.S. 147, 157 n.6 (1969)).

The primary litigants in the § 727 Trial were Richard and the Plaintiff.  Each of them had a full and fair opportunity to examine Richard at trial.  Each of them did just that, fully developing in detail his testimony about the Trust and how he has treated its assets over the years.  Richard cannot now seriously contend that he is surprised by his own testimony.  Further,

-23-

- The Trust account is the "family account" and Richard pays some of his living expenses from the Trust account. (Trial Tr., Jan. 15, 2015, (ECF No. 236), at 21-22, 31.)

- Richard believes the Trust document "pretty much" allows him to take money out and use it any way he wants. (Id. at 21.)

- Richard took several loans from the Trust over the years but did not list the Trust as a creditor, did not execute any loan documents with the Trust, and has not paid any interest on the loans even though he is aware that the IRS requires interest payments on such loans. (Trial Tr., Jan. 14, 2015, (ECF No. 235), at 185-88.)

- Taxes and bills for the family vacation home in Florida as well as expenses from various country club memberships are paid out of the Trust bank account. (Trial Tr., Jan. 15, 2015, (ECF No. 236), at 26-27, 30-31.)

- Payments from various entities that were regular in nature went through the Trust bank account first and payments that were irregular in nature went directly into Richard's personal account but "whether they went directly [to my personal account] or went in through the Trust, it all wound up in that family expenditure account." (Trial Tr., Jan. 16, 2015, (ECF No. 237), at 170.)

- Richard considers the Trust a "bypass, a pass-through entity for purposes of the tax returns" and that any Trust income "is simply added to the joint return of [his] wife and [Richard]." (Id. at 119.)

Neither Richard nor Lois refute any of Richard's testimony at the § 727 Trial. Nor do either of them support their responses to the Plaintiff's motion for summary judgment with any affidavits that even attempt to explain or otherwise mitigate Richard's testimony. As noted earlier, a motion for summary judgment is the time and the means for a party to "put up or shut up" on showing

---

because the Plaintiff specifically cited to Richard's testimony regarding the Trust at the § 727 Trial, Lois cannot reasonably claim surprise that the Court might also consider additional passages of Richard's testimony about the Trust at the § 727 Trial. At the hearing on the cross-motions for summary judgment on June 10, 2015, the Court specifically asked counsel for Lois whether Lois refuted any of Richard's testimony about the Trust at the § 727 Trial. She said no. In these circumstances, it is both permissible under Rule 56(c) and prudent for the Court to examine Richard's testimony at the § 727 Trial about the Trust without the Court being limited to the specific excerpts of such testimony identified by the Plaintiff.

material issues of fact in dispute. Based on Richard's own uncontroverted testimony, the Court finds that he basically treats the assets of the Trust as his own personal property for all purposes, whether signing documents, receiving distributions, or simply paying his everyday expenses.

Richard seeks to avoid the legal consequences that flow from such facts by countering that he has no legal right to use the Trust assets without permission from Lois, pointing to the provisions in the Trust that purport to give Lois authority as a trustee and managing trustee. However, Richard fails to support this argument with any evidence that he has ever requested or obtained Lois's permission to make any distribution of property of the Trust, to sign any documents on behalf of entities in the Trust, or to spend any of the Trust money. Richard's technical argument that he must first get Lois's permission before he takes any money or property out of the Trust is wholly unsupported by any affidavit from Richard, Lois or anyone else. Nowhere in his § 727 Trial testimony did Richard indicate that he is, or ever has been, in any way limited in his handling of the Trust assets by Lois. Nor does Lois's Declaration even hint, let alone claim, that Lois has ever exercised any authority with respect to distributions of the Trust assets. Lois's Declaration is conspicuously silent as to whether Richard has ever requested her permission to make distributions or take Trust property, whether she has ever participated in any decision with respect to distribution of Trust property or, for that matter, whether she has ever been involved in any aspect of the administration of the Trust assets. The only evidence before the Court, consisting largely of Richard's own detailed and uncontroverted testimony at the § 727 Trial, shows that Richard treats the Trust as his own personal property for all purposes, to do with entirely as he sees fit, unrestrained by Lois.

The undisputed facts show that Richard and Lois themselves have entirely disregarded any restrictions on Richard's use and enjoyment of the assets in the Trust. The unfettered control that Richard alone exerts over the assets of the Trust, and the manner in which he uses the Trust assets, show that this is precisely the type of case that is most offensive to the public policy articulated by the Michigan Supreme Court. The Court holds that Richard cannot in these circumstances hide behind the spendthrift provision in Section 4.3 of the Trust nor behind his factually unsupported argument that he cannot himself reach the Trust assets without Lois's permission. For the Court to conclude anything other than that Richard's beneficial interest in the Trust is property of his bankruptcy estate would require the Court to completely disregard Michigan public policy.

> If Richard's beneficial interest in the Trust is property of the
> <u>bankruptcy estate, can the Plaintiff administer all of the assets in the Trust?</u>

That leaves one last issue: does the Court's holding that Richard's beneficial interest in the Trust is property of this bankruptcy estate permit the Plaintiff to administer *all* of the assets in the Trust? Richard did not raise this issue, but Lois did.

As noted earlier, Richard's answer to paragraph 21 of the Complaint admits that all of the assets of the Trust were owned by Richard before he transferred them into the Trust. However, as also noted earlier, Lois's answer to paragraph 21 of the Complaint admits only that some of the assets of the Trust were owned by Richard before they were transferred into the Trust. Richard did not file an affidavit or any other documents either in support of his own motion for summary judgment or in opposition to the Plaintiff's motion for summary judgment indicating that any assets have ever been contributed to the Trust by anyone other than himself. However, paragraph 4 of Lois's Declaration states that, "[s]ince creating the Trust in 1986, I have contributed in excess of

-26-

$1.5 million of my own income and assets to the Trust to assist in supporting the family." Paragraph 5 of the Declaration states that "[t]he attached ledger accurately reflects my contributions to the Trust."  The "attached ledger" lists 24 deposits in various amounts that were made either to "Comerica" or to "Comerica-Lewiston Trust," beginning on February 27, 2006 and continuing until December 14, 2012.

At the hearing on the cross motions for summary judgment, Lois argued that even if the Court holds that Richard's beneficial interest in the Trust is property of his bankruptcy estate, that does not mean that the Plaintiff can administer all of the assets in the Trust because of the deposits listed on the attachment to the Declaration.  The Court rejects this argument for several reasons.

First, the Declaration is untimely and is not properly before the Court.  As noted earlier, when Lois filed her response on April 30, 2015 to the Plaintiff's motion for summary judgment, Lois did not support her response with an affidavit, but attached only an unsigned list of deposits.  On June 5, 2015, after receiving Richard's and Lois's response to his motion, the Plaintiff filed a reply brief in support of his motion and pointed out that under Fed. R. Civ. P. 56(c)(2), as incorporated by Fed. R. Bankr. P. 7056, the unsigned list of deposits attached to Lois's response is not admissible evidence that the Court can consider when deciding the cross motions for summary judgment.  It was only after the Plaintiff's reply brief was filed that Lois filed for the first time a signed statement, the Declaration, in an apparent attempt to cure this problem.  Lois filed the Declaration on June 9, 2015, one day before the scheduled hearing.  Neither the Federal Rules of Bankruptcy Procedure nor the Court's Local Bankruptcy Rules permit the filing of the Declaration one day prior to the scheduled hearing and, for that reason alone, the Court disregards it.

-27-

Second, even if the Court accepts the Declaration, at most all that it establishes is that Lois made deposits into one or two bank accounts, that may or may not have been owned by the Trust, over a period of years, from 2006 through 2012. It does not follow from that fact either that the Trust is not violative of public policy in Michigan, or that the spendthrift provision in Section 4.3 of the Trust is suddenly enforceable. For all of the reasons explained earlier in this opinion, the spendthrift trust provision in Section 4.3 of the Trust is not enforceable as a restriction on any transfers by Richard as a beneficiary of the Trust. Because Richard's own uncontroverted testimony demonstrates that his beneficial interest entitles him to complete and unfettered use and enjoyment of all of the Trust assets, then that is what is available to be reached by his creditors, and is property of his bankruptcy estate. Any deposits that may have been made by Lois, even if they were made to a bank account owned by the Trust, do not take the spendthrift provision in the Trust outside of the public policy proscription against self-settled spendthrift trusts in Michigan.

Third, Lois cites no authority in Michigan holding that gratuitous "contributions" to a trust by one who is not a named settlor of the trust, and who has no obligation to make such contributions, diminishes in any way the recovery that creditors of a beneficiary of a self-settled trust – in this case Richard – may recover from the trust.

Fourth, to the extent that there is any probative value to the Declaration at all, it only serves to reinforce the fact that Richard treats all of the property of the Trust – both the interests in the entities held by the Trust, and any cash held by the Trust – as his own personal property, free to use as he sees fit. Ironically, Lois's statement in the Declaration that she made deposits in the Trust – despite the fact that she is not named as a settlor of the Trust – is entirely consistent with Richard's utter disregard of the Trust provisions and of the distinction between the Trust's property and his

-28-

own property.  He treats all of the assets in the Trust, whether interests in entities or in cash, as his own, to do with as he wishes, whenever he wishes.

The Declaration neither creates any genuine issues of material fact that prevent the Court from granting the Plaintiff's motion for summary judgment, nor limits in any way the Plaintiff's rights to administer *all* of the property in the Trust based upon this Court's judgment that Richard's beneficial interest in the Trust is property of this bankruptcy estate.

## Conclusion

There are no genuine issues of material fact in dispute.  The spendthrift provision that restricts Richard as a beneficiary of the Trust from transferring his right to receive any distributions from the Trust is not enforceable under applicable Michigan law.  Because the restriction is unenforceable under applicable Michigan law, Richard's beneficial interest in the Trust is not excluded from his bankruptcy estate under § 541(c)(2) of the Bankruptcy Code.  It became property of his bankruptcy estate under § 541(a)(1) of the Bankruptcy Code when he filed Chapter 7.  For these reasons, the Court will enter an order granting the Plaintiff's motion for summary judgment, holding that Richard's beneficial interest in the Trust is property of his bankruptcy estate.  The Court will also enter an order denying Richard's motion for summary judgment.

.

Signed on June 24, 2015

```
        /s/ Phillip J. Shefferly
        Phillip J. Shefferly
        United States Bankruptcy Judge
```

-29-